**Dated: June 4, 2021**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| David A. Stewart and Terry P. Stewart, | ) | Case No.  15-12215-JDL |
| | ) | Chapter 7 |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| SE Property Holdings, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No.  16-1087-JDL |
| David A. Stewart and Terry P. Stewart, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER GRANTING IN PART AND DENYING IN PART RED
### BRITT TRUST'S  MOTION TO QUASH SUBPOENA

#### I. Introduction

The Red Britt Irrevocable Trust (the "Trust"), a non-party in this adversary
proceeding, has moved to quash a subpoena issued to it by the Plaintiff on the basis that
(1) the subpoena is unduly burdensome, (2) the information and documents sought by the

subpoena have already been produced from other sources or do not exist, and (3) it seeks information from records which are irrelevant to these proceedings. The Trust also seeks sanctions against the Plaintiff for the undue burden which the subpoenas have imposed upon it. On June 3, 2021, the Court held a hearing on the *Red Britt Irrevocable Trust's Motion to Quash Subpoena* [Doc. 107] and Plaintiff *SEPH's Response to Red Britt Irrevocable Trust's Motion to Quash* [Doc. 112]. Based on the record before the Court and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7052 and 9014.

## II. Background

This adversary now stands ready for trial on the Plaintiff SE Property Holdings, LLC's ("SEPH") claims asserted in its Second *Amended Complaint Objecting to Discharge* filed on January 12, 2021, which objects to a discharge for Debtors David A. Stewart and Terry P. Stewart (either individually or collectively, the "Debtors") under several subsections of Bankruptcy Code § 727(a) and, alternatively, in the event the Court grants a discharge to Debtor David Stewart, that his debt to SEPH be excepted from discharge under § 523(a)(2)(A). For purposes relevant to the Motion to Quash currently before the Court, SEPH's Second Amended Complaint asserts § 727(a)(2) claims that the Debtors "with the intent to hinder, delay, or defraud a creditor or an officer of the estate...has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, or concealed" property rightfully belonging to SEPH or the Debtor's bankruptcy estate's to various individuals and entities associated with other members of the Debtors' family.

Specifically, with regard to the Trust's Motion to Quash, SEPH alleges, and there is evidence in the record to support the allegation, that in the spring of 2014 Debtor David Stewart suggested to his mother, Ruth Carroll, that she form the Trust for the benefit of her grandchildren to hold approximately $66,000 for alleged unpaid royalties owed to her by another Stewart affiliated entity, Raven Resources. Ms. Carroll was not present for any discussions about the creation of the trust, there is yet to be produced any documents establishing Ruth Carroll's mineral interest ownership from which the royalty debt establishing the initial Trust *res* accrued, and the transfer or assignment of any mineral interest to the Trust has never been recorded. Ms. Carroll testified at her deposition that she "didn't feel [she] was owed" the royalty interest from Raven. The Trust named Debtor David Stewart as its primary beneficiary, the Debtors' daughter as trustee and Mrs. Stewart and the Debtors' children as secondary beneficiaries.

The Second Amended Complaint further alleges that Ruth Carroll, at the direction of Debtor David Stewart, executed documents that assigned the Royalty Debt and unencumbered mineral interests of Raven Resources to a newly-created entity, NOG, LLC ("NOG"), in exchange for membership interests in NOG. Subsequently, the ownership interests of NOG, including those owned by Ruth Carroll, were transferred to the Trust on or about July 23, 2014. [Doc 76, ¶ 26]. SEPH asserts that transferring assets from Raven Resources to NOG and then to the Trust was part of a "scheme to intentionally hinder, delay, and defraud creditors by transferring property properly part of Debtors' estate within one year of the Petition Date, Debtors are not entitled to discharge under § 727 of the Bankruptcy Code." [Doc. 76 ¶ 29].

3

### III. The Subpoena

SEPH issued a subpoena to the Trust on March 26, 2021, notice and copies of which SEPH emailed on April 1, 2021, to counsel for the Debtor's who had agreed to accept service.  The subpoena to the Trust sought production of the following documents:

> 1. All documents that constitute, refer, reflect, or relate to federal and state tax returns for Red Britt Trust for tax years 2014 to present, including, but not limited to, the returns themselves, accompanying schedules and worksheets, and communications relating to the returns.
>
> 2. All documents that constitute, refer, reflect, or relate to the federal estate tax returns for any entity in which the Red Britt Trust holds any direct or indirect interest for tax years 2014 to present, including, but not limited to, the returns themselves, accompanying schedules and worksheets, and communications relating to the returns.
>
> 3. All documents that refer, reflect, or relate to any payments, distributions, dividends, disbursements, or other flows of funds to, from, or on behalf of the Red Britt Trust and/or any entity in which the Red Britt Trust holds any interest.
>
> 4. All bank statements for the Red Britt Trust and/or for any entity in which the Red Britt. Trust holds any interest.

[Doc. 97-1, pg. 7 of 7].

### IV. Applicable Law

#### A. Undue Burden

A party moving to quash a subpoena on the grounds of undue burden pursuant to Fed.R.Civ.P. 45(d)(3)(A)(iv) bears the burden of proof.  *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citing *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (*Linder* holding that burden "of proving that subpoena is oppressive is on the party moving to quash"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48

(S.D. N.Y. 1996) (holding that "the burden of persuasion in a motion to quash a subpoena... is borne by the movant").

The Court recognizes that compliance with a subpoena will inevitably involve some measure of burden to the subpoenaed non-party. "It is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subject to undue burden or significant expense merely by virtue of having received a subpoena." *Taylor v. Grisham*, 2020 WL 3172708 (D. N.M. 2020). Whether a subpoena imposes an "undue" burden upon a non-party is a case-specific inquiry that turns on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.,* 228 F.R.D. 111, 113 (D. Conn. 2005*) (*quoting *U.S. v. International Business Machines Corp.,* 83 F.R.D. 97, 104 (S.D. N.Y. 1979); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D. Kan. 2003). The determination requires a court to balance the interests served by demanding compliance with a subpoena against the interests furthered by quashing it. "The status of a person as a non-party is a factor that weighs against disclosure." *Id.* at 663. "However, the court will not excuse compliance simply because the non-party asserts it is unduly burdensome." *Ensminger v. Credit Law Center, LLC,* 2020 WL 409730 (D. Kan. 2020). The subpoenaed party must show compliance would seriously disrupt its normal business operations. *Id.* "Determination of issues of 'undue burden' are committed to the discretion of the trial court." *Johnson v. Bryco Arms*, 226 F.R.D. 441, 444 (E.D. N.Y. 2005).

**B.  Are The Documents Requested By The Subpoena Relevant**

The Trust states that rather than seeking the "relevant information from the bankruptcy Trustee, parties to the action, or the relevant entities," it asserts that the "Plaintiffs have subpoenaed the Trust itself for *records which are irrelevant to these proceedings.*" (Emphasis added by Court) [Doc.107, pg. 4].  Fed.R.Civ.P. 45 does not include relevance as an enumerated reason for quashing a subpoena.[1]  It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)[2] and Rule 34.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Transcor, Inc. v. Furney Charters, Inc*., 212 F.R.D. 588, 591 (D. Kan. 2003); *Oppenheimer Fund, Inc. v. Sanders* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978).  "A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Transcor, Inc*. 212 F.R.D. at 591. When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the

[1]All future references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

[2] Rule 26(b) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,...the parties' relative access to relevant information,...the importance of the discovery in resolving the issues,... .  Information within this scope of discovery need not be admissible in evidence to be discoverable."

presumption in favor of broad disclosure. *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-12 (D. Kan. 2002).

As detailed above, there is little doubt that the creation of and transactions with and within the Trust are at the very heart of SEPH's claims of fraudulent conveyances and attempts to hinder or hide property from the Debtors' creditors. Debtor David Stewart's mother was the trustor, his daughter is the trustee and he is the primary beneficiary. There has been deposition testimony from the former in-house counsel for the Debtors, Oklamiss and Raven Resources that the purpose of the Trust was to "protect" the Debtors' property from creditors. [Case No.15-12215, Doc. 466-1, pgs. 256-257].

The Trust argues, however, that the Trust's involvement in these proceedings is no longer relevant because "[t]he Bankruptcy Trustee has already dealt with the sole transaction that made Red Britt a relevant entity;" all of the conveyances of property into the Trust were reversed, and that the Trust's relevance to the information sought by the subpoena has been "addressed by the reconveyance of the property back to Raven." [Doc 107, ¶ 9, pg. 7 & 8 ]. SEPH dismisses this argument by using the old adage that "Debtors cannot get their proverbial hand caught in the cookie jar, reverse the fraudulent transactions, and say that SEPH is not entitled to discovery on those reversed transactions." [Doc. 112, pg. 5]. There is strong law supporting SEPH's "cookie jar" analogy.

There are two views regarding whether a fraudulent transfer of the property within one year before the filing of its petition for relief under the Bankruptcy Code is cured for purposes of dischargeability pursuant to § 727(a)(2)(A) by its re-transfer or "reversal" to the debtor after the debtor files his petition. One line of cases, taking a strict statutory

approach, holds that under no circumstances does a debtor's "reversal" of a fraudulent transfer constitute a defense to an objection to discharge under § 727(a)(2)(A). *In re Bajgar*, 104 F.3d 495 (1st Cir. 1997) (holding that re-transfer subsequent to filing a bankruptcy petition does not cure the fraudulent transfer, and, thus, does not avail the debtor of a discharge under § 727); *Davis v. Davis (In re Davis)*, 911 F.2d 560, 562 (11th Cir. 1990) (holding a discharge may be denied under §727(a)(2)(A) even if the debtor recovers fraudulently transferred property prior to the filing for bankruptcy); *In re Paulding*, 370 B.R. 11 (Bankr. D. Mass. 2007) (holding that the "mere fact that debtor and his wife, before commencement of debtor's Chapter 7 case, reversed effect of challenged transfer by conveying property back to debtor and wife as tenants by the entirety did not prevent the trustee from successfully asserting claim to deny debtor a discharge based on this transfer.").

Another line of cases holds that a debtor's discharge may be granted over a § 727a)(2)(A) objection only if the debtor "reveals the transfer to his creditors, [and] recovers substantially all the property *before* he files his bankruptcy petition...." *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1345 (9th Cir. 1986) (Emphasis added) (debtor had revealed the transfer to creditors and was making an effort to recover the property at the time the involuntary petition was filed). Under either line of cases, where, as here, the property was re-transferred *after* bankruptcy and only *after* the trustee and the creditor were investigating claims of fraudulent transfers, the re-transfer does not impair or make irrelevant SEPH's objection to discharge. (Emphasis added). Moreover, the fact that the re-transfer may have mitigated potential damages for the fraudulent transfer is irrelevant.

8

See e.g. *In the Matter of Krehl*, 86 F.3d 737 (7th Cir. 1996); *In the Matter of Smiley*, 864 F.2d 562, 569 (7th Cir. 1989) (So long as the debtor acted with the requisite intent under Section 727(a)(2)(A), his discharge may be denied even if creditors did not suffer any harm.); *In re Gordon,* 526 B.R. 376, 391 (10th Cir. BAP 2015). The Debtors did not "reverse" the alleged fraudulent transfers to the Trust until after the bankruptcy and the creditors began to press the argument. For purposes of this adversary and the present Motion to Quash, the "reversal" of the transfers is irrelevant.

### V.  Conclusion

Virtually all information sought is, in the Court's view, relevant. The real question is whether the documents sought by the subpoena exist and, if so, whether the request for the production imposes an undue burden on the Trust and whether the documents are more easily and appropriately obtainable from other sources. The Court addresses these questions and whether the Trust's Motion to Quash should be granted or denied with respect to each of the four (4) categories of documents described in the numbered paragraphs as stated in the subpoena [Doc. 97-1, pg. 7 of 7]:

1. The subpoena requests all documents related to the federal and state tax returns for the Trust for the tax years 2014 to the present. It is the general policy of the Court to restrict the production of tax returns to a five-year span unless special circumstances exist. At the present time, the Court sees no such special circumstances. Such documents are relevant, and if they exist, **IT IS ORDERED** that the Trust produce its Federal and State tax returns and related documents for the tax years 2014 through 2018.

2. The subpoena seeks tax records of all entities in which it holds an interest for the

last eight years.  SEPH's Response states that counsel for the Trust has indicated to him that all transfers from Raven Resources to Oklamiss and NOG (which were transferred to Trust) "had been undone."[3]  If, in fact, the Trust no longer holds an interest in any other entity it should simply respond to the subpoena by saying that no such documents exist. If it *currently has possession* of any tax records of other entities, **IT IS ORDERED** that the Trust produce the same for tax years 2014 to 2018.  There is no obligation on the Trust under the subpoena or this Order to obtain and produce tax records of any entity other than the Trust itself if such tax records are not currently in its possession.

**3.**  The subpoena seeks all documents that refer, reflect, or relate to any payments, distributions dividends, disbursements, or other flows of funds to, from, or on behalf of the Trust and/or any entity in which the Trust holds any interest.  **IT IS ORDERED** that the Trust produce any such documents as they relate to the Trust.  The Trust is not obligated under the subpoena or this Order to produce any such documents as they may relate to any other entity.

**4**.  The Court next considers the request for the production of all bank statements for the Trust from 2014 to the present.  The Court deems such documents relevant. However, while the Court understands the reasons for SEPH seeking this information, a seven (7) year span of time for bank statements is problematic.  This Court's general policy

---

[3] The Court notes that counsel for SEPH states that when he told counsel for the Trust that he was not requesting documents that did not exist, and if there were no assets in the Trust or its related entities, counsel for the Trust should just say as much. The Trust's counsel purportedly responded by saying "I'm not saying that." [Doc. 112, pg. 3].

is to limit the production of bank statements to 3-5 years unless special circumstances require otherwise. The Trust asserts, and SEPH agrees, that there was deposition testimony in 2015 by Jana Stewart-Rush, the trustee of the Trust, that the Trust did not have a bank account. If this was also true for the intervening years until today the Trust should simply state that no such documents exist. At this point, the Court does not know whether the parties are arguing about a problem that doesn't exist. If such bank records exist, **IT IS ORDERED** the Trust must produce its bank statements for tax years 2014 to 2018.

The Court does not believe it to be appropriate to compel the Trust to produce bank statements for any entity in which the Trust holds any interest. Such documents are more appropriate to be produced by subpoenas, or other discovery devices, directed to the entity itself or the person known to have possession of the entities documents. In this case, Debtor David Stewart is the manager and/or person in actual control of most, if not all, of the various entities involved in this litigation. SEPH itself argues that "[t]hese entities are merely alter egos of David Stewart...(and) it is possible that Debtors could provide many of the documents that SEPH requests from the Red Britt Trust." [Doc. 112, pg. 6]. If the Debtors have not provided all the documents requested from these entities (and supplemented as required by law) production should be enforced by an appropriate Motion to Compel directed to those entities or David Stewart, not by a subpoena seeking such documents from the Trust. Therefore, **IT IS ORDERED** that the Motion to Quash is **Granted** with respect to bank statements of any entity other than the Trust.

**IT IS FURTHER ORDERED** that   any documents which the Court has ordered the

11

Trust to produce as stated in the above numerical paragraphs be delivered to SEPH on or before June 14, 2021.

**IT IS FURTHER ORDERED** that the Trust's request for sanctions against the Plaintiff is **Denied**.

# # #