**Dated: March 14, 2022**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID A. STEWART and | ) | Case No. 15-12215-JDL |
| TERRY P. STEWART, | ) | Ch. 7 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| SE PROPERTY HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 16-1087-JDL |
| | ) | |
| DAVID A. STEWART, TERRY P. | ) | |
| STEWART, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS OR STRIKE
CERTAIN ALLEGATIONS AND CLAIMS AS UNTIMELY**

**I. Introduction**

In this adversary proceeding, the Debtors' major creditor, SE Property Holdings, LLC

("SEPH") seeks to deny the Debtors a discharge predicated upon numerous grounds

under 11 U.S.C. § 727 and objects to the dischargeability of its debt under 11 U.S.C. § 523(a).[1]  The case stands at issue and ready for trial based upon the allegations contained in SEPH's *Seconded Amended Complaint* filed on January 12, 2021. [Adv. Doc. 76].[2] Debtors have filed their motion to dismiss or strike numerous allegations and/or claims for relief on the basis that such allegations and/or claims were not timely brought within 60 days following the conclusion of the first meeting of creditors as required by Fed.R.Bankr. P. 4004 and 4007.[3]

SEPH has responded by asserting (1) the newly asserted allegations in its *Second Amended Complaint* "relate back" to the conduct, transactions or occurrences in its timely filed Original *Complaint*, (2) the amendments contained in its *First Amended Complaint* and *Second Amended Complaint* were not known to SEPH at the time of the filing of its original *Complaint*, and (3) the Debtors waived any objections to SEPH's *Second Amended Complaint* when they failed to respond to SEPH's *Motion for Leave To File its Second Amended Complaint*.  Before the Court for consideration are the *Defendants' Motion to Dismiss or Strike Certain Allegations and Claims As Untimely* [Adv. Doc. 128] and *SEPH's*

---

[1]All further references to "Code", "Section", and "§" are to the United States Bankruptcy Code, Title 11 U.S.C. § 101 *et seq*., unless otherwise indicated.

[2] References herein to the docket of this adversary proceeding appear in the following form: Adv. Doc. ___ .

References herein to the docket of this Chapter 7 case appear in the following form: BK 15-12215 Doc. ___ .

[3] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

*Response to Defendants' Motion to Dismiss or Strike Certain Allegations and Claims As Untimely.* [Adv. Doc. 145].

## II. Jurisdiction

This Court's has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) as a matter arising under 11 U.S.C. §§ 727 and 523(a).  Pursuant to 28 U.S.C. § 157(b)(2)(I) & (J), this action is a core proceeding as it relates to the Debtors' discharge and dischargeability of a debt.

## III. Procedural Background

1. On September 30, 2014, SEPH filed involuntary petitions against the Debtors in the United States Bankruptcy Court for the Southern District of Alabama.  On  March 18, 2015, the Bankruptcy Court in Alabama entered orders for relief under Chapter 7 of the Bankruptcy Code.  On June 12, 2015, the Alabama Bankruptcy Court, upon the motion of the Debtors, transferred the case to this Court.

2. After the transfer, the Meeting of Creditors, pursuant to Rule 341, was held on July 22, 2015, and concluded the same day.  The original deadline for filing objections to the Debtors' discharge was August 28, 2015. [BK 15-12215 Doc. 120].

3. On August 13, 2015, SEPH filed its *Unopposed Motion to Extend Deadline to Object to Discharge or Dischargeability of Debts* [BK 15-12215 Doc. 152], which was granted by the Court's order of August 28, 2015, extending the time to file a complaint objecting to discharge or dischargeability to October 28, 2015. [BK 15-12215 Doc. 171].

4. On October 28, 2015, SEPH filed its second *Unopposed Motion to Extend Deadline to Object to Discharge or Dischargeability of Debts* [BK 15-12215 Doc. 208],

3

which was granted by order dated November 12, 2015, extending the time to file a complaint objecting to discharge or dischargeability to fifteen (15) days after the conclusion of the 2004 examinations of Jenna Rush, the daughter of the Debtors and trustee of the Red Britt Trust, and Debtor David Stewart's mother, Ruth Carroll. [BK 15-12215 Doc. 217].

5. On March 7, 2016, SEPH filed its third *Motion to Extend Deadline to Object to Discharge or Dischargeability of Debts* [BK 15-12215 Doc. 291], which was granted by order dated March 28, 2016, extending the time to file a complaint objecting to discharge or dischargeability to 15 days after the conclusion of 2004 examinations of five additional witnesses. [BK 15-12215 Doc. 309].  On August 26, 2016, SEPH filed its notice confirming that the 2004 examinations of the five additional witnesses had been completed by August 11, 2016, and thus the deadline to file a complaint objecting to discharge or dischargeability was extended to and included August 26, 2016. [BK 15-12215 Doc. 373]. After August 26, 2016, while SEPH sought leave to file amended complaints, it never sought further extensions of the time within which to file objections to discharge or dischargeability.

6. On August 26, 2016, SEPH timely filed its *Complaint* (generally referred to herein as the "Original *Complaint*"). [Adv. Doc. 1].  After the Debtors filed their answer and without seeking an extension of time within which to extend the time to object to the debtor's discharge or dischargeability, SEPH retroactively sought and obtained an order from the Court to file its *First Amended Complaint*. [Adv. Doc. 19].  On June 30, 2017, SEPH filed its *First Amended Complaint*. [Adv. Doc. 14].  Thereafter, on December 11, 2017, Debtors filed their *Answer to First Amended Complaint.* [Adv. Doc. 27].

4

7. On November 19, 2020, the Court entered a Scheduling Order [Adv. Doc. 65], setting the deadline to file a motion for leave to amend on December 9, 2020.  On December 9, 2020, SEPH filed its *Motion for Leave to File Its Second Amended Complaint.* [Adv. Doc. 71].  Without objection*,* on January 7, 2021, the Court entered its order granting SEPH leave to file its *Second Amended Complaint* by January 12, 2021. [Adv. Doc. 74].  On January 12, 2021, SEPH filed its *Second Amended Complaint*. [Adv. Doc. 76].  On January 26, 2021, the Debtors filed their *Amended Answer to Second Amended Complaint* setting forth various affirmative defenses including, most relevant to the matter currently before the Court, the statute of limitations. [Adv. Doc. 82].

## IV. Discussion

### 1.  Debtors' Motion to Dismiss

The Debtors have moved for partial dismissal of the *Second Amended Complaint* based on the contents of the pleadings.  Accordingly, although Debtors have not mentioned the same, the Court will treat the motion as one under Fed.R.Civ.P. 12(c), made applicable in adversary proceedings by Rule 7012, for partial judgment on the pleadings. Judgment may be entered to dispose of a claim in a multi-claim complaint if the content of the complaint and exhibits thereto, along with matters which may be judicially noticed, demonstrate that the plaintiff's claim cannot succeed as a matter of law.  The standard for considering a motion for judgment on the pleadings is the same as used to consider motions to dismiss under Rule 12(b)(6).  The Court must "accept all facts pleaded by the nonmoving party as true and grant all reasonable inferences from the pleadings in that party's favor.  "Judgment on the pleadings is appropriate only when the 'moving party has

clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Sanders v. Mountain America F.C.U.,* 689 F.3d 1138, 1141 (10th Cir. 2012).  "At least when the facts are undisputed, a Rule 12(c) motion is a proper vehicle for seeking dismissal on the basis of an affirmative defense that the claim is time-barred." *Sullivan v. Costa (In re Costa)*, 471 B.R. 768, 772-73 (Bankr. D. Mass. 2012) (citing 5C Charles Alan Wright and Arthur R. Miller*, Federal Practice & Procedure* § 1367 (3rd ed. West 2012).  In the current case, the truth of the allegations of the complaints are disputed, but the timeliness of the assertion of those allegations is not.

**2.  The Timeliness of Claims Asserted in the *First* and *Second Amended Complaints***

Debtors seek dismissal of certain Counts and/or to strike certain claims asserted in the *Second Amended Complaint* because SEPH failed to obtain an extension of the time to file objections to discharge or dischargeability beyond the Court's August 26, 2016, deadline.  The *First* and *Second Amended Complaints* were filed on June 30, 2017, and January 12, 2021, respectively.  It is not in dispute that while SEPH obtained leave to file the *First* and *Second Amended Complaints*, it did not extend the deadline for making objections to the Debtors' discharge under § 727 or the dischargeability of the debt owed it under § 523(a).

No statute sets any deadline for a creditor to seek determination of the dischargeability of a debt under § 523(a) or an objection to a debtor's discharge under § 727(a), but the Federal Rules of Bankruptcy Procedure do.  Rule 4004(a) provides that in a Chapter 7 liquidation case, a complaint objecting to the debtor's discharge under § 727(a) must be filed no later than 60 days after the first date set for the meeting of

6

creditors under § 341(a). Rule 4007(c) sets an identical 60-days-after-the-first-meeting-of-creditors deadline for filing a complaint under § 523(a) objecting to the dischargeability of a debt. Each Rule provides that the Court can extend its deadline by a motion filed before the deadline has expired. Rules 4004(b) and 4007(c). Rule 9006(b)(3) provides that the Court can enlarge the time for taking action under Rules 4004(a) and 4007(c), only to the extent and under the conditions stated in those rules. As stated, it is not disputed that SEPH failed to seek any further extension from the Court as to the deadline to object to either discharge and/or dischargeability beyond the August 26, 2016 deadline.

Several of the alleged wrongful acts of the Debtors which SEPH relies upon to bar the Debtors' discharge occurred after the expiration of the August 26, 2016 objection deadline. For example, it is clear that SEPH (and the Court) did not learn of David Stewart's allegedly false testimony and concealment of the payment of his attorney's fees from the proceeds of the settlement of claims against British Petroleum until late August 2017. Applicable here is Rule 4004(b)(2) which allows a party to request permission from the court to file a complaint objecting to a debtor's discharge *even after* the original deadline to object. Rule 4004(b)(2) attempts to resolve the problem created when the basis for denying the debtor's discharge is first learned during the "gap period," which is the period of time between when the deadline to object to discharge or dischargeability expires and when the discharge is actually granted. See e.g. *In re Bressler,* 601 B.R. 318, 329 (Bankr. S.D. N.Y. 2019); 9 *Collier on Bankruptcy* ¶ 4004.03 (16th ed. 2019). Rule 4004(b)(2) provides:

> A motion to extend the time to object to discharge may be filed
> after the time for objection has expired and before discharge

> is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. *The motion shall be filed promptly after the movant discovers the facts on which the objection is based.*

(Emphasis added).

As will be discussed in more detail below, no such sixty-day, or any, "gap period" protection exists for claims of non-dischargeability of a debt brought under § 523(a).

On January 12, 2021, three years and four months after it learned of the Debtors' use of the BP Claim Proceeds to pay attorney's fees, SEPH filed its *Second Amended Complaint*, which included for the first time allegations regarding the same.  Not only is it clear that SEPH failed to act "*promptly*" after it discovered those facts as required by Rule 4004(b)(2), it *never* filed such a motion extending the objection deadline.  Not having complied with the requirements of either Rule 4004(a) or (b) or 4007(b), SEPH  must rely upon the "relation-back" doctrine to preserve any objection the grounds for which it first learned of after the Court ordered extension of the objection deadline of August 26, 2016, expired.

**3.  The "Relation Back" Doctrine**

SEPH contends that the new allegations asserted in its *Second Amended Complaint* "relate back" to the Original *Complaint* under Rule 15(c).  "Relation back" is governed by Fed.R.Civ.P. 15, made applicable to adversary proceedings by Rule 7015.  Rule 15(c)(1)(B) specifically addresses "relation back" of amendments, and provides, in relevant part, that

> [a]n amendment to a pleading relates back to the date of the original pleading when:...the amendment asserts a claim or

8

defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.

SEPH argues that the new allegations and/or new Counts in the *Second Amended Complaint* relate back to the date of the timely filed Original *Complaint* and are not time-barred because "[a]t the core of all of SEPH's claims (in the Original *Complaint* and the *Second Amended Complaint*) is Debtors' failure to disclose assets, attempts to conceal assets and transfers, and misrepresentation of assets." [Adv. Doc. 145, pg. 7].  On the other hand, the Debtors contend that the allegations in the *Second Amended Complaint* do not satisfy the same "conduct, transaction, or occurrence" requirement under Rule 15(c) and thus cannot relate back to the claims asserted in the Original *Complaint*.

"As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts.*" In re Universal Factoring Co., Inc.,* 279 B.R. 297, 303 (Bankr. N.D. Okla. 2002) (citing *F.D.I.C. v. Conner,* 20 F.3d 1376, 1385-86 (5th Cir.1994)).  "On the other hand, amendments generally will not relate back if they interject entirely different facts, conduct, transactions or occurrences." *Id.*; *Wilson Family Foods, Inc. v. Brown (In re Brown)*, 467 B.R. 536, 541 (Bankr. M.D. Ga. 2012) ("even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back"); *In re Brown*, 2013 WL 3353829 *5 (Bankr. N.D. Okla. 2013); *Hernandez v. Valley View Hospital Association*, 684 F.3d 950, 962 (10th Cir. 2012).  However, since "the phrase 'conduct, transaction, or occurrence' found in Rule 15(c) is cast in the disjunctive," the allegations in the Amended Complaint "need not arise from the same transaction or occurrence

9

attempted to be set forth in the [Initial] Complaint, so long as it springs from the same conduct." *Universal Factoring Co., Inc.*, 279 B.R. at 307.

Rule 15(c) does not define the scope of the terms "conduct, transaction or occurrence." When applying this standard to the facts of a given case, the Court gives content of those terms not by generic or ideal notions of what constitutes "conduct, transaction or occurrence," but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer the allegations in the amended pleading. See *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). "As many courts have recognized, the most important factor in determining whether a pleading relates back is 'whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading.'" *In re Mack Industries., Ltd.,* 2021 WL 192000 *2 (Bankr. N.D. Ill. 2021); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149 n. 3, 104 S.Ct. 1723 (1984). The linchpin to Rule 15(c) is notice before the limitations period expires. *Schiavone v. Fortune,* 477 U.S. 21, 31,106 S.Ct. 2379 (1986); *McClelland v. Deluxe Fin. Servs., Inc.*, 431 Fed.Appx. 718, 723 (10th Cir. 2011) (the policy behind the relation back provisions of Rule 15(c) is based upon notice).

Put another way, the "[d]efendant is not deprived of protection of the statute of limitations if the original complaint fairly discloses the general fact situation out of which the new claims arise." *Spillman v. Carter*, 918 F.Supp. 336, 340 (D. Kan. 1996) (quoting *Masters v. Daniel Intern,. Corp.,* 1991 WL 107410 *10 (D. Kan. 1991)); *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254, 1260 (11th Cir. 2008). Additionally, "[w]here there are a series of transfers, it is necessary that the Court examine 'whether the events are

linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is truly an independent transaction.'" *In re The Bennett Funding Group, Inc*., 275 B.R. 447, 451 (Bankr. N.D. N.Y. 2001) (quoting *In re Austin Driveway Services*., Inc., 179 B.R. 390, 396 (Bankr. D. Conn. 1995)).  The courts "somewhat liberally" apply the relation back provisions of Rule 15. *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998).  It is a matter committed to the court's sound discretion to decide whether a new claim arises from the same transaction or occurrence.

Because the determination as to whether the relation-back doctrine can be applied to "save" what would otherwise be time-barred Counts and/or allegations in the *Second Amended Complaint*, it is necessary to closely compare the Counts and allegations in the timely filed objections to discharge and dischargeability in the Original *Complaint* with those in the untimely objections in the *Second Amended Complaint.*

### A. The Original *Complaint*

This adversary was timely commenced on August 26, 2016, by the filing of SEPH's Original *Complaint* which sought to bar the discharge of the Debtors under subsections (2), (4) and (5) of § 727(a) or, alternatively, SEPH sought to have its debt determined non-dischargeable under § 523(a)(2)(A).  SEPH's claims in its Original *Complaint* can be summarized as follows:

**1. Section 727(a)(2)(A)** denies discharge to a debtor where-

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or

11

> concealed, or has permitted to be transferred, removed,
> destroyed, mutilated or concealed – (A) property of the debtor,
> within one year before the date of the filing of the petition...

SEPH asserted that the Debtors with the intent to hinder, delay, or defraud creditors and the Trustee had engaged in a multi-step plan to transfer property, which rightfully belonged to Debtors' bankruptcy estate, to family members and to entities associated with members of the Debtors' family. These transfers included Debtors' membership interests in Oklamiss Investments, LLC ("Oklamiss"), and consequently its ownership interest in Debtors' most valuable asset, Raven Resources, LLC ("Raven"). These transfers also included the transfer of property to the Red Britt Trust, a trust created by Debtor David Stewart in which his mother was the trustee and he the sole beneficiary.

**2. Section 727(a)(4)** denies discharge to a debtor where -

> The debtor knowingly and fraudulently, or in connection with
> the case – (A) made a  false oath or account...

SEPH asserted that the Debtors in their original and amended Schedules and Statement of Financial Affairs (SOFA), as well as testimony at their 341 Meeting of Creditors and their Rule 2004 examinations, failed to disclose all their assets, the accurate value of assets disclosed (specifically the value of household goods and furnishings and personal property including a ring gifted to their daughter) and all their income.

**3.  Section 727(a)(5)** denies a discharge to a debtor where-

> the debtor has failed to explain satisfactorily, before
> determination of denial of discharge under this paragraph, any
> loss of assets or deficiency of assets to meet the debtor's
> liabilities...

SEPH asserted that the Debtors had not offered an explanation for the sharp drop in their alleged net worth between 2008 and 2013. Specifically, the Debtors' personal

12

financial statement dated December 15, 2008, showed a net worth of $54,300,684. By December 31, 2012, their net worth had declined to $7,677,138 and by December 31, 2013, less than one year before bankruptcy, to $312,446.

> **4. Section 523(a)(2)(A)** provides that an individual is not discharged of a debt-
>
> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
>
> (A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or the insider's financial condition;...

SEPH alleged that Debtor David Stewart, after inducing SEPH's predecessor in interest in 2011 to extend and renew a $16 million loan which he personally guaranteed, engaged in a scheme to intentionally hinder, delay, and defraud SEPH through a series of fraudulent conveyances (basically the same series of transactions described in SEPH's § 727(a)(2) claim above). SEPH further asserted that new consideration for the extension of the $16 million loan included Stewart, as manager of certain of his affiliated limited liability companies, granting SEPH a security interest in certain claims held by those LLC's against British Petroleum arising from the 2010 Deepwater Horizon Oil Spill in the Gulf of Mexico (hereinafter referred to as the "BP Claims"). In this claim for relief, SEPH essentially restated the same set of facts as it had with regard to its § 727(a)(2) claim, that David Stewart had engaged in a "scheme to intentionally hinder, delay and defraud SEPH through a series of fraudulent conveyances" providing justification for exception to discharge under § 523.

### B. The *Second Amended Complaint*

On December 9, 2020, SEPH filed its *Motion for Leave to File Its Second Amended*

13

*Complaint*. [Adv. Doc. 71].  The Debtors did not oppose the same, and the Court granted SEPH leave to file its *Second Amended Complaint*. [Adv. Doc. 74].  On January 12, 2021, SEPH filed its *Second Amended Complaint.* [Adv. Doc 76].  The Debtors filed their amended answer to the *Second Amended Complaint* which delineated some thirty-seven (37) defenses, including the Statute of Limitations ("Sixth Defense") and the failure to state a claim ("Ninth Defense"). [Adv. Doc. 82].

The *Second Amended Complaint* did not assert any Counts upon any new statutory grounds, but it did add factual allegations under Counts previously asserted in the Original and *First Amended Complaint*.  For example, SEPH expanded the number of transactions which it asserts that Debtors had falsely represented in their Schedules and the Statement of Financial Affairs (SOFA) in violation of § 727(a)(4).  SEPH also asserted that "the Debtors had injured, delayed, and defrauded creditors by taking excessive compensation from the Debtors' entities" in violation of the Court's *Preliminary Injunction Order*.  It also stated in more detail how the Debtors had violated the terms of the *Preliminary Injunction Order* by not following the prescribed procedures provided therein as to giving notice to the Trustee and the creditors prior to transferring or encumbering property of the estate by consenting to Kirkpatrick Bank to take judgment and a judgment lien against Raven. Probably most importantly, however, for the first time SEPH asserted that the Debtors had hindered, delayed, and defrauded creditors by transferring to the Debtors' counsel for his attorney fees, proceeds from the settlement of the BP Claims which SEPH asserts belonged either to it as part of its collateral under a Security Agreement or to the bankruptcy estate.

### C. Comparison of Claims in the Original *Complaint* with Claims in the *Second Amended Complaint*[4]

### 1. The Falsification of Documents Under § 727(a)(3) Count II.

The Original *Complaint* asserted a § 722(a)(2)(A) Count based on allegations that the Debtors had engaged in a multi-step plan to hinder and defraud their creditors by a series of transfers from Debtors to affiliated entities and/or their children and the Red Britt Trust, of which Mr. Stewart's mother was the trustee and he the sole beneficiary. SEPH alleged that while the Debtors claimed that these transfers took place in 2011, there was strong documentary evidence, including tax returns and deposition testimony indicating that the transfers did not actually take place at that time. The *Second Amended Complaint* added another § 727(a) Count based on subsection (3) that the Debtors had falsified (backdated) documents relating to these transfers. Debtors claim that this Count asserted in the *First Amended Complaint* and restated in the *Second Amended Complaint* should be time-barred. SEPH asserts that the new § 727(a)(3) Count relates back to Debtors' conduct supporting its § 727(a)(2)(A) fraud claim.

The Court views these § 727(a)(2) and (3) Counts and allegations as part and parcel of the same set of operative facts. The claims of falsification of documents was alluded to, though not specifically stated, in the Original *Complaint* and is inextricably tied to the same alleged § 727(a)(2) fraudulent scheme conducted by the Debtors. "As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical

---

[4] SEPH's *First Amended Complaint* added new Counts under § 727(a)(3) for falsification of documents and § 727(a)(6)(A) for failure to obey an order of the court. There is no need to make a detailed comparison between the Original *Complaint* and the *First Amended Complaint* because (1) the *Second Amended Complaint* superceded the *First Amended Complaint* and (2) the *First Amended Complaint* was also untimely filed in disregard of Rules 4004 and 4007.

defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts." *In re Commercial Financial Services, Inc.*, 294 B.R. 164, 176 (Bankr. N.D. Okla. 2003).

Although Debtors claim of falsification of documents may constitute a separate new Count, it is viewed by the Court as merely an additional legal theory of recovery arising out of the same § 727(a)(2) fraud claims contained in the Original *Complaint*. From multiple hearings and pleadings early in this case, the Court was aware that SEPH was asserting that documents had been backdated as part of the alleged fraudulent scheme. The Court views the Debtors as being long on notice that such allegations may have been forthcoming as part of SEPH's original claim of the multi-step fraudulent scheme set forth in its Original *Complaint*. In short, the Court finds that the evidence necessary to support the "new" § 727(a)(3) Count in the *First Amended* Complaint, and restated in the *Second Amended Complaint,* could have been introduced as evidence in support of the original § 727(a)(2) claim, and thus relates back to the timely filed Original *Complaint.*

### 2. Violation of the *Preliminary Injunction Order* Under §727(a)(6)- Count V.

The *First Amended Complaint* added a § 727(a)(6) Count, reasserted in the *Second Amended Complaint* as Count V, which denies discharge to a debtor who refuses "to obey any lawful order of the court." The order in question is the Court's *Agreed Order Granting Preliminary Injunction* entered on January 5, 2017 (the "*Preliminary Injunction Order*"). [Adv. 16-1002, Doc. 32]. The *Preliminary Injunction Order* prohibited, among other things, the Debtors or their affiliates from transferring, conveying or encumbering their assets without prior notice to the Trustee and SEPH. David Stewart acting on behalf of Raven

16

confessed judgment in favor of Kirkpatrick Bank and consented to the entry of a Judgment Lien against all of Raven's Assets.  There is no doubt that SEPH could not have had knowledge of Debtors' possible violation of the order until April/May 2017, more than four years after filing the Original *Complaint* and after the August 26, 2016, objection deadline.  Nevertheless, SEPH included its § 727(a)(6) claims in both the *First and Seconded Amended Complaints* without extending the deadline to object to discharge as required by Rule 4004(b)(2).  The violation of a post-petition court order cannot "relate back" to anything other than the order itself.

In its *Second Amended Complaint*, for the first time SEPH asserted a second § 727(a)(6) claim based on another violation of the *Preliminary Injunction Order* which provided that the Debtors would receive a salary from Raven "in a reasonable amount to be determined in good faith between the Trustee and the Debtors."  In paragraphs 40-48 of the *Second Amended Complaint*, SEPH asserted that the Debtors violated the order "by taking excessive compensation from Debtors' entities in the form of exorbitant salaries and distributions."  Again, these allegations are premised upon alleged post-petition salaries in violation of the order entered in January 2017, and cannot logically relate-back to any pre-petition conduct contained in the Original *Complaint*.  "Bottom-line" is that the violation of a post-petition court order cannot "relate back" to anything other than the order itself.

Under the circumstances, SEPH had the specific remedy of *promptly* filing a motion to extend the time to file an objection to discharge after discovery of the violation of the *Preliminary Injunction Order* in accordance with Rule 4004(b)(2).  It didn't do that.

### 3. Violation of the Preliminary Injunction Order Under § 727(a)(2)(A)-Count V.

SEPH asserts that "Debtors' violation of the *Preliminary Injunction Order* is just another part of the Debtor's failure to disclose assets, attempts to conceal assets and transfers, and misrepresentation of assets and relates back to the allegations in SEPH's Initial Complaint regarding Raven Resources." [Adv. Doc. 145, pg. 10 n. 4]. In asserting such a position, SEPH paints the Debtors' misconduct with too broad a brush. Just because a debtor may have engaged in pre-petition fraudulent conduct does not allow post-petition fraudulent conduct unrelated to pre-petition conduct to relate back to the pre-petition conduct. This is particularly true where, as here, the basis of the post-petition fraud, violation of the *Preliminary Injunction Order*, did not even arise until nearly three years after the filing of the bankruptcy. Clearly, there is no basis for finding the violation of the order relates to the same "transaction, occurrence or conduct" of Debtors' allegedly fraudulent pre-petition conduct.

As stated above, the legal basis for SEPH's objecting to discharge on the basis of the violation of the *Preliminary Injunction Order,* if at all*,* must be based on § 727(a)(6)(A) for failure "to obey any lawful order of the court," not § 727(a)(2) for fraudulent transfer, removal or concealment of assets. SEPH's claim for refusal to comply with of the order is independent of, and not related, to any claim or facts arising out of the concealment or transfer of assets stated in the Original *Complaint*. Section 727(a)(2)(A) pertains to a debtor's wrongful removal, transfer or concealment of "property of the debtor, *one year before the date of the filing of the petition*..." To the extent that any property of the Debtors could be said to have been "transferred, removed or concealed" by virtue of the violation

of the *Preliminary Injunction Order*, it was done so nearly three years *after*, and not one year *preceding*, the filing of the petition.

While disobedience of the *Preliminary Injunction Order* may have resulted in the "transfer" of assets (encumbering by way of confession of judgment or grant of a security interest of Debtors' affiliates), such "transfers" are not the gravamen of SEPH's § 727(a)(2) claims in the Original *Complaint* and are too attenuated to be regarded as encompassed within its timely-filed fraudulent transfer or concealment claims.  Furthermore, while the Debtors were on notice of claims for the concealment or transfer of assets within the objection deadline, they would not have been on notice of any claim of a § 727(a)(6) violation of the order within the objection deadline or any extension thereof.

In sum, Court finds that both of SEPH's § 727(a)(2) and § 727(a)(6) claims for violation of the *Preliminary Injunction Order* are independent of any claim that was, or could have been, asserted in the Original *Complaint*, and thus do not relate-back to the Original *Complaint* filed within the Rule 4004(a) deadline, as extended by the Court, and are thus time-barred.

### 4. False Statements Under Section 727(a)(4).

The Original *Complaint* alleged that Debtors had made "false oaths and accounts" relative to the assets in both their original and amended Schedules and SOFA.  Most of these alleged inaccuracies are reasserted in paragraph 55 of the *Second Amended Complaint* in support of Count III; however, SEPH amended the Original and *First Amended Complaints* by new allegations regarding the Schedules, the SOFA and 2004 examination testimony based upon post-petition discovery.  Although there are some additional changes in the allegations, Debtors specifically complain about  subparagraphs

19

(J) and (K) of the *Second Amended Complaint* relating to the value of a ring and David Stewart's interest in affiliate Neverve.

Debtors were clearly on notice from early on, certainly by the time of the filing of the Original *Complaint*, that SEPH was challenging the accuracy of their Schedules, particularly with regard to the personal property, including the $36,000 ring which Terry Stewart had given to her daughter. [Adv. Doc.1, ¶ 30(I)].  The Court finds that all of the allegations contained in paragraph 55 of the *Second Amended Complaint* are embellishments upon, or post-petition discovered evidence of, inaccuracies or omissions from the Schedules and SOFA which the Original *Complaint* addressed.  If known, the allegations would have been allowable evidence to support SEPH's false statement claims in its Original *Complaint.*  Furthermore, Debtors were, or certainly should have been, on notice that their Schedules, from both an inclusiveness and valuation basis, were being challenged.  Thus, the Court finds that the *Second Amended Complaint* allegations and Counts regarding the Schedules relate-back to the timely-filed Original *Complaint*, with one notable exception: allegations in paragraph 55(K) in the *Second Amended Complaint* that relate to David Stewart's alleged false testimony regarding the receipt of Neverve BP Claims Proceeds and payment of those funds to his counsel which occurred during the course of these bankruptcy proceedings in August 2016, are not sufficiently connected to inaccuracies in the bankruptcy Schedules so as to relate-back to the filing of the Original *Complaint.*  Those allegations regarding the BP Claims Proceeds will be separately addressed below.

### 5.  Section 523(a)(2)(A) Fraud Relating to the BP Claims Proceeds.

In its § 523(a)(2)(A) claim set forth in Count VII of its Original *Complaint*, the only

allegation relating to BP Claims was that "on June 23, 2011, David Stewart... induced [SEPH] to enter into a certain Second Supplement to Loan Documents..., which extended the maturity date of the Stewart Loan another three years... by... pledging as additional collateral for the Stewart Loan certain claims against British Petroleum and others arising from 2010 Deepwater Horizon Oil Spill." [Adv. Doc. 1, ¶ 38].  Of course, there were no allegations in the Original *Complaint* regarding the recovery of the BP Claims of Neverve, LLC or Shimmering Sands Development Co., LLC and David Stewart's agreement with his counsel to utilize those funds for the payment of counsel's fees.  The proceeds were received on August 3, 2016, three weeks before the filing of the Original *Complaint,* but that fact was concealed from SEPH and the Court until an *in camera* proceeding on August 31, 2017, when the Court ordered its disclosure.  The question then becomes whether the allegations regarding the payment of the BP Claims proceeds to Debtors' counsel, the concealment thereof and false testimony relating to them in the *Second Amended Complaint* can be deemed to relate back to the allegations in paragraph 38 of the Original *Complaint.*

The factual allegations regarding the use of at least $348,404.41 of the BP Claim proceeds to pay Debtors' counsel, and the non-disclosure of the same, are contained in paragraphs 30-39, 55(K), 79-85 and 108 of the *Second Amended Complaint*.  Those allegations are incorporated by reference into all six Counts; however, given the summary of facts and legal conclusions contained in each Count, the only Counts under which matters concerning the BP Claims Proceeds would logically fall are Count III § 727(a)(4) for making a false oath and Count VI under § 523(a)(2)(A) for fraud.

Because this matter is before the Court on a motion to dismiss or to strike

counts/and/or allegations, the Court will give liberal construction of the allegations contained in the *Second Amended Complaint* so as to deem included the Debtors' (and their counsel's) use of and/or false testimony regarding the BP Claims proceeds as within the scope of both Count III and Count VI. See *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000) (the "fundamental tenor of the Rules is one of liberality rather than technicality"). While liberality in construing the allegations may be permitted, Rule 15(c) "does not contemplate depriving defendants of the protections of a statute of limitations." *In re Bozeman*, 226 B.R. 627, 630 (8th Cir. BAP 1998). Furthermore, Rules 4004 and 4007 are analogous to statutes of limitations and are strictly construed. See *In re Themy*, 6 F.3d 688, 689 (10th Cir. 1993). With these guidelines in mind, the question then becomes whether the allegations and Counts regarding the use of the BP Claims proceeds to pay attorney fees relate back to the Original *Complaint*.

### A. The 727(a)(4) BP Claims Proceeds Under Count III

SEPH's Count III for false statements under § 727(a)(4) itself only specifically addresses false statements made by Debtors in their original and amended Schedules, original and amended SOFA's and Rule 2004 examinations. Count III does not separately mention the BP Claims proceeds issue, but it does incorporate by reference all preceding paragraphs which would include 55(K), which specifically alleges:

> "During the hearing on the Motion to Compromise, Mr. Stewart went so far as to falsely represent that he did not know whether Neverve received any BP proceeds, even though he caused those proceeds be distributed, at least in part, to Debtors' counsel and another preferred creditor. Mr. Stewart further falsely represented under oath that he paid Debtors' counsel from his personal funds, rather than from funds that

22

Neverve should have received on account of the BP claims."[5]

With respect to subsequent events, some courts have taken a hard line on relation back. See e.g. *Abramson v. Boedeker*, 379 F.2d 741, 744 (5th Cir. 1967) (stating that "[i]t is perfectly obvious whether on general principles or on F.R.Civ.P. 15(c) that allegations concerning events occurring subsequent to the filing of the original petition cannot possibly relate back to the earlier date of filing."). Other courts have held that a subsequent event is barred from relation back only where it is unrelated to the offenses pled in the original complaint. *Yates v. Auto City 76*, 299 F.R.D. 611, 615 (N.D. Cal. 2013) (non-bankruptcy case). The Court has been unable to find any case allowing post-petition ("subsequent") events to relate back to the filing of an original complaint involving Rule 4004.[6] The Court does not believe it is appropriate to do so here. The allegedly false statements by David Stewart in the Schedules, in his trial testimony in January 2016 on the *Motion to Approve*

---

[5] On June 23, 2017, David Stewart testified by deposition as follows:

> Q. Okay. Other than those, have any of the entities or you received any proceeds from the BP claims?
> A. I have not.
>               ****
> Q. What about Neverve?
>               ****
> A. I don't know about Neverve.
> Q. Okay. To your knowledge, did Neverve make a BP claim?
> A. Neverve did make a BP claim.
> Q. Okay. And, again, just to be clear, to your knowledge, have any proceeds or payments or funds been paid on that BP claim by Neverve?
> A. I do not know.

This deposition testimony was admitted into evidence at the *Motion to Approve Compromise and Settlement* held before the Court on August 30, 2017. [BK 15-12215 Doc. 466-2, pgs. 109-112].

[6] The absence of any authority may be due to the fact that Rule 4004(b)(2) provides the sole mechanism by which "subsequent" or post-petition events are determined not to be subject to discharge.

23

*Controversy and Settlement Agreement* and his deposition of June 2017 do not by time or substance arise out of the same conduct, transaction or occurrence as any alleged false statements in the Schedules and SOFA which were the basis of the claims asserted in the Original *Complaint*. The BP Claims proceeds were not even then in existence. As soon as SEPH learned of the use and concealment of the BP Claims proceeds on around September 1, 2017, it should have promptly sought relief under Rule 4004(b)(2). It did promptly seek to have the $348,404 in proceeds used to pay attorney's fees disgorged from Debtors' counsel. It did not, however, seek to have the Debtors denied a discharge on such grounds until the filing of its *Second Amended Complaint* more than three years later.

### B. The 523(a)(2)(A) Claim Regarding the BP Claims Proceeds in Count VI

In Count VI of the *Second Amended Complaint* SEPH restates the allegations in the Original *Complaint* that the debt owed it by Debtors in the approximate amount of $20 million is non-dischargeable pursuant to § 523(a)(2)(A) on the basis that David Stewart (1) fraudulently induced SEPH's predecessor in interest to enter into the loan agreement by "falsely representing that all entities with BP claims in which Debtors hold any interest were parties to the" loan agreement and (2) "after inducing" SEPH's predecessor to enter into the loan he made fraudulent transfers in an attempt "to avoid and frustrate SEPH's attempts to collect" the loan. As is the case with Count III, the specific allegations under Count VI did not mention the Debtors concealment and payment of the Neverve, LLC BP Claims proceeds to pay debtor's counsel; however, as with Count III, Count VI does incorporate by reference all preceding paragraphs of the *Second Amended Complaint*

which includes paragraphs 30-39 which specifically sets forth allegations pertaining to the use of the BP Claims proceeds to pay Debtor's counsel without counsel or Debtors ever disclosing the same.

SEPH, in effect, argues that the transactions in 2011 and 2016 should relate back because both transactions were "fraudulent."  Labeling the Debtors' conduct, both pre-and post-petition, as fraudulent is not sufficient for relation back purposes.  Although the BP Claims were mentioned in the Original *Complaint*, the Court finds they were not made in reference to the same "conduct, transaction or occurrence" as required by Rule 15(c)(1)(B). The only reference to the BP Claims contained in the Original *Complaint* relate to Stewart in 2011 inducing SEPH to extend his obligations by, among other things, granting it a security interest in BP claims. [Adv. Doc. 1, ¶38].  Those allegations do not make reference to any fraud in the grant of the security interest.  The allegations relating to the use of the BP Claims proceeds in mid-2016, even if wrongful, is too far removed in both time and substance from the purported grant of a security interest in the BP Claims proceeds occurring back in 2011.  Any claim for the misuse or concealment of the BP Claims proceeds didn't even exist at the time of the filing of the Original *Complaint*.

The only claim assertable under Chapter 7 for post-petition, pre-discharge ("gap-period") transactions, such as the BP Claims proceeds issue, are actions brought by the trustee under § 549.  No such claims have been asserted by the trustee in this case.  As to gap-period claims of a creditor, here SEPH, if they don't relate back they are lost unless there was compliance with Rule 4004(b)(2).  The use and/or concealment of the BP Claim proceeds may or may not be actionable on other grounds, but it cannot be said to relate back to the same conduct, transaction or occurrence in 2011 so as to support SEPH's §

25

523(a)(2)(A) based Count VI.  Those allegations insofar as they are incorporated into Count VI are stricken.

### 4. Did the Debtors Assertion of the Statute of Limitations as an Affirmative Defense in Their Answer Effectively Raise Their Rule 4004 and 4007 Objections

As stated above, on December 9, 2020, SEPH filed its *Motion for Leave To File Its Second Amended Complaint*, attaching a copy of the proposed *Second Amended Complaint.* [Adv. Doc. 71].  The Debtors did not file an objection to the motion, and the Court entered the order granting leave for SEPH to file the *Second Amended Complaint*. [Adv. Doc. 74].  The Debtors did timely file an answer to the *Second Amended Complaint* in which the Debtors asserted an affirmative defense of the statute-of-limitations. [Adv. Doc. 82].  SEPH contends that the Debtors should have asserted their Rule 4004 and 4007 objections in response to SEPH's *Motion for Leave to File Amended Complaint*.  SEPH does not present any authority for their position.

The Court does not know whether the inclusion of a statute of limitations defense was part of a "boiler-plate," "laundry-list" defense, not atypical in litigation pleadings, just to make sure a defendant was "covering all his bases."  Whether it was pled in the answer to the *Second Amended Complaint* by luck or by calculation is irrelevant.  As a matter of law, it preserved the Debtors' right to object to the untimeliness of the *Second Amended Complaint* under Rule 4004 and 4007.

In *Kontrick v. Ryan,* 540 U.S. 443, 124 S.Ct. 906 (2004), in discussing the time period for filing claims set out in Rule 4004, the Supreme Court made clear that such Rules constitute a time bar to the filing of a complaint, and the Court opined that "[t]ime bars...generally must be raised in an answer or responsive pleading."  *Id.* at 458 (citing

Fed.R.Civ.P. 8(c), made applicable to adversary bankruptcy proceedings by Rule 7008(a)). Courts*, citing Kontrick* have held that the time-limits prescribed in 4004 and 4007 are akin to statutes of limitations, and may be plead as an affirmative defense. See eg., *Disch v. Rasmussen*, 417 F.3d 769, 776 (7th Cir. 2005); *Alabama Department of Economic and Community Affairs v. Lett*, 368 Fed.Appx. 975, 978 (11th Cir. 2010) ("At the pleading stage, by asserting a statute limitations defense in his answer (the debtor) preserved the limitations defense provided by Rule 4007(c)."); *In re Santos,* 112 B.R. 1001, 1008 (9th Cir. BAP 1990) ("the timeliness of a dischargeability complaint presents an affirmative defense that must be raised in an answer or responsive pleading"); *In re Richardson*, 520 B.R. 659, 662 (Bankr. W.D. Mich. 2014) ("The deadline imposed by Bankruptcy Rule 4007(c) "is not phrased as a 'statute of limitations,' but essentially functions in that regard."). The Court thus finds that Debtors pleading the statute of limitations in its answer encompassed their objection to the timeliness of SEPH's objection to discharge and dischargeability under Rules 4004 and 4007.

## 5. Whether Debtors Waived their Right to Object to the Timeliness of SEPH's *Second Amended Complaint*

SEPH contends that the Debtors waived their right to assert an objection under Rule 4004 and 4007 by not raising the same in response to SEPH's *Motion for Leave to File its Second Amended* Complaint. SEPH does not present any authority for their position. The Court finds directly applicable the following finding in *In the Matter of Harman,* 628 B.R. 359, 373 (Bankr. N.D. Ga. 2021):

> As the Supreme Court has noted, the time limits prescribed by Rule 4004(a) to bring an objection to discharge are not jurisdictional and, thus, can "be forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540

27

U.S. 443, 454-56, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Rule 8(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure, generally requires that a statute of limitations defense "must be raised in an answer or responsive pleading." *See id*. at 458-59, 124 S.Ct. 906; FED.R.CIV.P.8(c). Rule 7(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7007 of the Federal Rules of Bankruptcy Procedure, states that "pleadings" include "a complaint, [an] answer, [an] answer to a counterclaim or cross-claim, [a] third party complaint, [an] answer to a third-party complaint, and [a] reply to an answer." *See Chavarria v. Hamlet*, 2010 WL 1461040, *3 (N.D. Cal. April 12, 2010) (citing FED.R.CIV.P.7(a)). Thus, as stated by the *Chavarria* court, "[a] response to a motion to amend is clearly not a responsive pleading within the meaning of Rule 7(a), and therefore respondent was not required to raise its affirmative defenses in that response in order to avoid an implied waiver." *Id.* (citing *Morrison v. Mahoney*, 399 F.3d 1042, 1047 (9th Cir. 2005)). Accordingly, the Court finds that Defendant has not waived his right to raise the time limits of Rule 4004(a) by failing to oppose Former Plaintiff's Motion for Leave to Amend.

The Court therefore finds that the Debtors did not waive their right to interpose any objection to the timeliness based on Rules 4004 and/or 4007 by failing to respond to SEPH's motions for leave to amend.[7]

---

[7] The Court notes that many courts recognize that the doctrine of "equitable tolling" can apply to preserve or extend the time limit for objecting to discharge or dischargeability of a debt. See e.g., *In re Ochs,* 608 B.R. 252 (Bankr. D. Colo. 2019). SEPH has not asserted such a claim to justify their failure to timely file for an extension of the time to file a discharge objection. Even if they had, to prove equitable tolling they would need to show: (i) they had been pursuing their rights diligently, and (ii) that some extraordinary circumstances have stood in the way. *Biester v. Midwest Health Services, Inc.,* 77 F.3d 1264, 1267-69 (10th Cir. 1996). A court may find equitable tolling applies to extend the deadline of an untimely action if the plaintiff shows: (1) lack of actual notice of filing requirement; (2) lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to defendant; and (5) plaintiff's reasonableness in remaining ignorant of the notice requirement. *McNaughton v. Maytorena (In re Maytorena),* 2007 WL 5509194 *7 (Bankr. D. N.M. 2011). The Court finds that equitable tolling would not be applicable to the present case.

28

## V. Conclusion

In accordance with the above, the Court finds that: (1) the allegations in Count II of the *Second Amended Complaint* seeking the denial of Debtors' discharge for falsification of records under § 727(a)(3) relate back to the same series of transactions, occurrences or conduct asserted in Count I of the Original *Complaint* and are therefore not time-barred; (2) allegations regarding violation of the *Preliminary Injunction Order* do not relate back to the Original *Complaint* to support claims objecting to discharge under § 727(a)(6) in Count V the *Second Amended Complaint*; (3) allegations regarding violation of the *Preliminary Injunction Order* do not relate back to the Original *Complaint* to support claims objecting to dischargeability of a debt under § 523(a)(2)(A) in Count VII of the *Second Amended Complaint*; (4) allegations regarding violation of the *Preliminary Injunction Order* do not relate back to support a claim for objection to discharge under § 727(a)(2) under Count I; (5) allegations regarding false statements in the Debtors' Schedules, SOFA, testimony in 2004 examinations, trial or depositions relate back to the Original *Complaint* and support claims under § 727(a)(4) in Count III of the *Second Amended Complaint*; (6) allegations regarding the receipt, concealment and/or use of the BP Claims proceeds do not relate back to the Original *Complaint* to support claims for false statements under § 727(a)(4) under Count III; and (7) allegations regarding the receipt, concealment and/or use of the BP Claims proceeds do not relate back to the Original *Complaint* to support claims objecting to the dischargeability of a debt under § 523(a)(2)(A) in Count VII of the *Second Amended Complaint*; (8) the Debtors properly raised the timeliness of SEPH's assertion of objections to discharge and dischargeability under Rules 4004(b)(2) and 4007 by the

assertion of the affirmative defense of statute of limitations in their answer *to the Second Amended Complaint;* and (9) Debtors did not waive objecting to the timeliness of SEPH's objections to discharge and dischargeability by not opposing SEPH's motions for leave to file amended complaints. Accordingly,

**IT IS ORDERED:**

1. Debtors' motion to dismiss Count II of the SEPH's *Second Amended Complaint* is **Denied**;

2. Debtors' motion to dismiss Count V of SEPH's *Second Amended Complaint* is **Granted;**

3. Debtors' motion to dismiss to the extent that it seeks to dismiss that portion of any Count to the extent it is based upon allegation(s) incorporated by reference relating to any violation of the *Preliminary Injunction Order* and/or the receipt, use, payment or concealment by Debtor or their counsel of BP Claims proceeds of Neverve, LLC and/or Shimmering Sands Development Co., LLC is **Granted**;

4. Consistent with preceding ¶ 3 above, Debtors' Motion to Strike the allegations in paragraphs 30-39, 40-48, 55(J) and (K), 63-71, 79-85, 103-106 and 108-109 (to the extent they refer to the receipt, use or concealment of the BP Claims proceeds) is **Granted.**

#   #   #